UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

BRUCE PUGH,                              )
                                         )
    Petitioner,                          )
                                         )
    v.                                   )    Case No.   12-cv-4012
                                         )
UNITED STATES OF AMERICA,                )
                                         )
    Respondent.                          )

## O R D E R  &  O P I N I O N

This matter is before the Court on Petitioner's § 2255 Motion (Doc. 1), Respondent's Motion to Dismiss (Doc. 5), Petitioner's Motion for Leave to Amend his § 2255 Motion (Doc. 7), his "Supplement Pleading" (Doc. 9), his "Request for the Court to Take Judicial Notice" (Doc. 13), and Petitioner's appointed counsel's Motion to Withdraw as Counsel (Doc. 12). For the reasons stated below, the § 2255 Motion is denied, the Motion to Dismiss is granted, the Motion for Leave to Amend, Supplemental Pleading, and Request for the Court to Take Judicial Notice are granted insofar as the Court considers the arguments raised therein, and the Motion to Withdraw as Counsel is granted.

### BACKGROUND

Petitioner pled guilty in this Court to conspiracy to distribute crack cocaine (Count I) and distribution of crack cocaine (Count VI) on August 9, 2009, pursuant to a written plea agreement that contained a waiver of his appeal and collateral attack rights. (08-cr-40087). Count I carried a mandatory life sentence because of Petitioner's three prior felony drug convictions, though the plea agreement provided

the opportunity for Petitioner to provide substantial assistance to the government and potentially receive a downward variance from that mandatory life sentence. (08-cr-40087: Doc. 47). On November 4, 2010, Petitioner was sentenced to 192 months imprisonment for Counts 1 and 6, running concurrently, 10 years of supervised release on both Counts, also running concurrently, and the payment of a $200 special assessment. (08-cr-40087: Doc. 130 at 48-50; 08-cr-40087: Doc. 113). This sentence reflected Petitioner's acceptance of responsibility and his substantial assistance to the government, as well as the "emergency" Sentencing Guideline amendments prompted by the Fair Sentencing Act ("FSA"). (08-cr-40087: Doc. 130 at 29; 08-cr-40087: Doc. 146). Despite his appeal waiver, Petitioner filed an appeal, which was dismissed as frivolous by the circuit court on October 21, 2011.[1] *United States v. Pugh*, 437 Fed.Appx. 520 (7th Cir. 2011).

The Court received Petitioner's instant § 2255 Motion on January 26, 2012. (Doc. 1). In it, Petitioner raised two claims: (1) that he should have been sentenced under the FSA and (2) that his trial counsel provided ineffective assistance because he failed to investigate Petitioner's claim that the government was relying on perjured testimony in its calculation of the amount of crack cocaine sold by Petitioner. Respondent's April 2, 2012 Motion to Dismiss was based on Petitioner's waiver of his right to file a collateral attack against the conviction and sentence contained in his plea agreement. (Doc. 5). Petitioner responded to this Motion, and also moved for appointment of counsel to assist him in investigating the basis of his ineffective assistance claim. (Doc. 8).

---

[1]   As Respondent notes, this appeal was untimely, but the government voluntarily waived its right to enforce the time limit. (Doc. 5 at 10-11).

Before the Court ruled on Petitioner's Motion for Appointment of Counsel, the Supreme Court decided *Dorsey v. United States*, holding that the FSA applies to all defendants sentenced after its August 3, 2010 enactment. 132 S.Ct. 2321 (2012). Chief Judge Shadid issued an administrative order directing the appointment of counsel for all cases raising a claim based on *Dorsey*, and so the Court appointed counsel for Petitioner under that order. (7/24/2012 Text Order). Petitioner's counsel was granted through December 11, 2012 to file an amended pleading. (9/12/2012 Text Order). On November 30, 2012, Petitioner's counsel filed a Motion to Withdraw as counsel, pointing out that the application of the FSA to Petitioner's case would not result in a lower sentence. (Doc. 12). No response to the Motion to Withdraw has been filed.

As the Court was considering Petitioner's claims and Respondent's arguments, Petitioner filed a belated brief raising, for the first time, the argument that his plea was unknowingly or unintelligently made because he pled only to distribution of more than 50 grams of crack cocaine. (Doc. 13). Though it is very untimely (the government's brief on the issue of waiver was filed in April 2012), the Court will consider the arguments raised therein.

## DISCUSSION

### I. Fair Sentencing Act

As Petitioner's counsel points out in his Motion to Withdraw, the application of the FSA would not result in a lower mandatory minimum sentence, because the FSA's changes affect only defendants who distributed 50-280 grams of crack cocaine; Petitioner's offense involved 2.7 kilograms (2700 grams) of crack cocaine,

3

and so is beyond the reach of the FSA. Regardless of whether the FSA is applied, Petitioner would be subject to § 841(b)(1)(A) due to his drug quantity, and thus to a mandatory minimum of life under that subsection due to his prior convictions.[2] Moreover, Petitioner executed a valid waiver of his right to file a § 2255 Motion, as discussed below, which bars his current attempt to collaterally attack his sentence. Therefore, Petitioner's counsel's Motion to Withdraw will be granted.

## II. Ineffective Assistance of Counsel and Waiver of Right to File a § 2255 Motion

Petitioner also claims that his trial counsel provided ineffective assistance by failing to investigate Petitioner's claim that the government was relying on perjured testimony in its calculation of the amount of crack cocaine sold by Petitioner. He now argues that he sold 10 ounces, or 283 grams, of crack cocaine to one particular buyer. (Doc. 1-1 at 8). He focuses his "Supplemental Statement of Facts and/or Motion for Leave to Amend"[3] (Doc. 7) on the details of this claim, and had previously moved for appointment of counsel and an investigator to address it (Doc. 8). As Petitioner executed a valid waiver of his right to file a § 2255 Motion, though, the Court need not address the merits of this argument.

---

[2]   Even the drug quantity Petitioner now alleges, 10 ounces (283 grams) is within the terms of § 841(b)(1)(A), not § 841(b)(1)(B) as Petitioner claims. (Doc. 1-1 at 8). Moreover, the Court notes that even if Petitioner could somehow now argue that he distributed only enough crack cocaine to put him within the terms of § 841(b)(1)(B) (which, as explained below, he cannot) that subsection provides a mandatory sentence of 10 years to life imprisonment for defendants with a prior felony drug conviction; Petitioner's sentence would still be within the statutorily allowable range.

[3]   As Petitioner requests, the Court considers this filing along with the § 2255 Motion.

Plea-agreement waivers of the right to appeal and/or collaterally attack a conviction and sentence are generally upheld and enforced, unless the "plea agreement was involuntary, the district court 'relied on a constitutionally impermissible factor (such as race),' the 'sentence exceeded the statutory maximum,' or the defendant claims 'ineffective assistance of counsel in connection with the negotiation of [the plea] agreement.'" *Keller v. United States*, 657 F.3d 675, 681 (7th Cir. 2011) (quoting *Jones v. United States*, 167 F.3d 1142, 1144–45 (7th Cir. 1999)). As the Court explained above, Petitioner's sentence did not exceed the statutory maximum; none of the other exceptions apply in this case, either.

A waiver will be enforced "if its terms are 'express and unambiguous,' and the record shows that the defendant 'knowingly and voluntarily' entered into the agreement.[4] *United States v. Chapa*, 602 F.3d 865, 868 (7th Cir. 2010) (*quoting United States v. Jemison*, 237 F.3d 911, 917 (7th Cir. 2001); *United States v. Woolley*, 123 F.3d 627, 632 (7th Cir. 1997)). To avoid the effect of his waiver, Petitioner must show that he did not know and understand either the terms of the plea agreement or the elements of the crime to which he pled guilty, which requires an examination of "the language of the plea agreement itself and also…the plea colloquy between the defendant and the judge." *Id.* (*citing United States v. Sura*, 511 F.3d 654, 661 (7th Cir. 2007); *Woolley*, 123 F.3d at 632). Here, there is no doubt that the terms of the collateral attack waiver are "express and unambiguous," and Petitioner does not claim otherwise.

---

[4] The Seventh Circuit evaluated the voluntariness of Petitioner's plea during his direct appeal, and determined that any challenge to it would be frivolous. *Pugh*, 437 Fed.Appx. at 522.

5

Likewise, Petitioner cannot overcome his own testimony that he knew and understood both the elements of the crimes to which he pled and the terms of the agreement. During the plea colloquy, the undersigned engaged Petitioner in a detailed discussion of his plea agreement, as well as of the crimes to which he was pleading guilty. (08-40087: Doc. 126 (hereinafter "Plea Tr.")). The Court explained the elements of each crime in detail, and Petitioner testified that he understood them; Petitioner later described for the Court his activities related to both the counts. (Plea Tr. at 7-9, 23-24). The Court also explained that Petitioner was subject to a mandatory minimum of life, and that the sentence imposed may vary from what his attorney had estimated. (Plea Tr. at 10, 12-16). As to the plea agreement's terms, as in *Chapa*, the undersigned, also an "experienced trial judge," "conducted a searching inquiry to ascertain that the Defendant understood all of the terms of the plea agreement. The judge highlighted all of the terms including potential penalties and sentencing, and [defendant] indicated that he understood them." *Id.* at 869. Petitioner "acknowledged that he had waived his right to appeal [and collateral attack], and that no threats, promises, representations, or agreements other than those set forth in the plea agreement had induced him to plead guilty." *Id.* (Plea Tr. at 6-7, 16-17). "Such representations, made by a defendant under oath at a plea colloquy, are entitled to a presumption of correctness." *Id.* (*citing Bowlin*, 534 F.3d at 660).

Where the Court has made "a complete record demonstrating that [the defendant] understood the terms of the waiver," the plea colloquy complies with Federal Rule of Criminal Procedure 11, and the Court can rely on it to determine

6

that Petitioner knowingly and voluntarily waived his collateral attack rights. *Id.* (citing *United States v. Schmidt*, 47 F.3d 188, 191 (7th Cir. 1995)). In addition, the Court "may discredit any reason that a defendant gives for withdrawing his guilty plea that contradicts his testimony at a plea hearing." *United States v. Weathington*, 507 F.3d 1068, 1072 (7th Cir. 2007) (citing *United States v. Walker*, 447 F.3d 999, 1005 (7th Cir.2006); *United States v. Schuh*, 289 F.3d 968, 975 (7th Cir. 2002)). Without a "compelling explanation," Petitioner cannot escape the presumption of truthfulness to which the testimony is entitled. *United States v. Linder*, 530 F.3d 556, 561 (7th Cir. 2008); *Weathington*, 507 F.3d at 1072; *United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005); *Key v. United States*, 806 F.2d 133, 136 (7th Cir. 1986). Petitioner presents no such "compelling explanation."

Petitioner's first argument against application of the waiver is that waivers create a bad incentive for defense attorneys, in that once their client has signed a wavier, they can "just quit." (Doc. 6 at 4). Essentially, Petitioner argues that waivers of appeal and collateral attack rights are inherently unfair and should not be enforced, but this is not the rule in the Seventh Circuit. *Jones*, 167 F.3d at 1145 ("waivers are enforceable as a general rule; the right to mount a collateral attack pursuant to § 2255 survives only with respect to those discrete claims which relate directly to the negotiation of the waiver.").

In his untimely brief claiming that the plea was unknowingly or unintelligently made, Petitioner also argues that he only pled to distributing more than 50 grams because that was the minimum then necessary to put him within the terms of § 841(b)(1)(A). It is true that Petitioner did not specifically plead to the 2.7

7

kilograms the government calculated, since at that time it made no difference to his mandatory minimum sentence of life whether he pled to 51 grams or 2700 grams, and that such a distinction would now matter under the FSA. However, in his § 2255 Motion, Petitioner admits to the Court that he sold 10 ounces, or 283 grams, to one particular buyer during the relevant period. (Doc. 1-1 at 8). As explained above, crack cocaine quantities over 280 grams are not affected by the FSA. A new trial would thus still result in a conviction under § 841(b)(1)(A), and would still invoke the mandatory life sentence. As also explained above, even a drug quantity of 51 grams, to which Petitioner undeniably pled, triggers a mandatory sentence of 10 years to life imprisonment when combined with a prior felony drug conviction, and so his sentence does not exceed even § 841(b)(1)(B)'s statutory maximum. Petitioner thus cannot argue on this basis for the invalidation of his plea and plea agreement.

Petitioner has not alleged facts that, if proven, would undermine his testimony that he understood and agreed to his guilty plea and plea agreement, and thus the Court must hold that Petitioner did knowingly and voluntarily agree to waive his right to mount a collateral attack on his conviction and sentence under § 2255.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing § 2255 Proceedings, the Court "must issue or deny a certificate of appealability when it enters an order adverse to the applicant." A certificate of appealability may only be issued where the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement has been interpreted by the Supreme Court to mean

that an applicant must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Further, where the district court denies a petition on procedural grounds, a petitioner must make a showing that reasonable jurists "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. If the district court denies the certificate, a petitioner may request that a circuit judge issue one. Fed. R. App. P. 22(b)(1)(3).

Based upon the record before it, the Court cannot find reasonable jurists would debate either that Petitioner's sentence would not be changed by the application of the FSA or that Petitioner's claims are barred by the enforceable waiver contained in the plea agreement, to which Petitioner knowingly, freely, and voluntarily agreed. Accordingly, a certificate of appealability is denied.

## Conclusion

For the foregoing reasons, Petitioner's § 2255 Motion (Doc. 1) is DISMISSED, and Respondent's Motion to Dismiss (Doc. 5) is GRANTED, and Petitioner's counsel's Motion to Withdraw (Doc. 12) is GRANTED. In addition, to the extent they request that the Court consider the arguments and allegations contained therein, Petitioner's Motion for Leave to Amend his § 2255 Motion (Doc. 7), his "Supplement Pleading" (Doc. 9), and his "Request for the Court to Take Judicial Notice" (Doc. 13) are GRANTED. The Court DECLINES to issue a Certificate of Appealability. IT IS SO ORDERED.

CASE TERMINATED.

Entered this <u>15th</u> day of January, 2013.

                                              <u>s/ Joe B. McDade</u>
                                              JOE BILLY McDADE
                                      United States Senior District Judge